Case number 14-7108. Patricia Wheeler, appellant, v. Georgetown University Hospital, also known as MedStar Georgetown Medical Center. Ms. Rucker for the appellant, Mr. Hedeck. Ms. Rucker, good morning. Good morning, Your Honors. May it please the Court. For the record, my name is Donna Rucker, and I represent the appellant in this case, Ms. Patricia Wheeler, who submits this appeal. We submit because the district court error in weighing evidence, judging credibility, and in improperly drawing inferences against Ms. Wheeler. By doing so, we also contend that the district court erroneously concluded that Ms. Wheeler could not establish pretexts, and that Ms. Wheeler's coworkers were not proper comparators. We also contend that the district court did not view the evidence in a light most favorable to Ms. Wheeler. We assert these contentions for three basic reasons. First, Ms. Wheeler, we submit, did present evidence from which a reasonable juror could conclude that the reasons offered by Georgetown, the appellee, were offered as pretext to mask the actual discrimination in this case. Here, Georgetown proffers that Ms. Hollingsworth, who was Ms. Wheeler's, at the time, was Ms. Wheeler's direct supervisor, had an honest and reasonable belief that the allegations made against Ms. Wheeler were such that warranted her termination. However, when Ms. Wheeler provided her response, which we believe and submit in this case, provided a question as to the truth and the veracity of the allegations made against Ms. Wheeler, and we say that because Ms. Wheeler did not simply offer denials or just conclusory statements. She, by way of specific information, challenged that the events either occurred or that events that were indicated were not things that she was, in fact, responsible for. Can I ask you, I thought you were not arguing that the four nurses had any animus. We're not arguing that the four nurses had animus. What we're offering in terms of... Because they were mistaken. That is correct. We're offering that with respect to Ms. Hollingsworth's position that these individuals made assertions that she relied upon to form what she contends, what Georgetown contends to be an honest and reasonable belief that Ms. Wheeler should be terminated. What we offer for the record and what we submit and the record holds is that when Ms. Wheeler responded, she provided direct information that directly contradicted the allegations, and not simply by mere conclusions or by just denials. She provided information that called into question, we submit, the truth and the veracity. And at that point, we submit that whether or not Ms. Hollingsworth properly continued to hold an honest and reasonable belief that Ms. Wheeler should be terminated for the events alleged becomes a question for the jury. But now you've mentioned the truth or veracity of the four nurses' accounts. I ask again, you're not alleging that the four nurses, not Hollingsworth, but the four nurses were motivated by any animus? We're not alleging that they were... The record is not developed with respect to any evidence of animus. We are relying on the fact that even if you accept what the nurses indicated to Ms. Hollingsworth, the issue here is whether or not Ms. Hollingsworth getting that information and then receiving a response from Ms. Wheeler continued to have an honest and reasonable belief. And when you have that scenario, what we believe and what we submit is that calls into question the state of mind,  It seems that that argument you've got pretty tough sledding given the case law about us not being a super personnel department and the issue being whether the supervisor honestly and reasonably believes something when there's four people who tell them something. But the issue, one issue I'd like for you to get to at some point in your argument is that my reading of this record, it appears that the explanation for the termination shifted because the termination letter doesn't say anything about past performance, anything prior to this one date in an incident where the four incidents happened. And the interrogatory responses signed by Georgetown don't say anything about past performance. But yet, Ms. Hollingsworth says that past performance was one of the reasons why she did what she did. What do you have to say about that? Well, Your Honor, I do say that the record shows that there's a problem with Georgetown in this case, indicating or establishing that there was actually any prior discipline in Ms. Wheeler's record. This record contains a direct contradiction and challenge by Ms. Wheeler that, in fact, she had prior disciplinary history. With respect to the Rule 30b-6 witness offered in this case to discuss the issue of discipline and policies and procedure, the record shows that if, in fact, Ms. Wheeler was going to be disciplined, there were specific policies and procedures that Ms. Hollingsworth was to follow to document the record. At the time that Ms. Wheeler pulled her record in December of 2009, it was devoid of any evidence of disciplinary actions that we find that Ms. Hollingsworth, in this case, relied upon. But I do think it is critical that, at some point or another, although, Your Honor, you are correct that Ms. Hollingsworth refers to this, I think it is pivotal that when we review the record, you have comparators, specifically C.S., who is a coworker who also had a significant disciplinary history, who also had acts that were committed that would be deemed a violation of the policies and procedures. But in this particular case, you do not have Ms. Hollingsworth or Ms. Sue Howell, who was the clinical director, making a decision to implement policies or to find a way to hold that particular employee liable for the violation of the policy. I looked at them. There were six people who you listed as comparators. And I looked and I didn't see any of their names in the interrogatory response from Georgetown, where they were asked to list all nurses that had been disciplined for any kind of similar misconduct. And they listed some. And none of the six comparators or alleged comparators were on Georgetown's list, which I take from that these six didn't get any discipline whatsoever, at least if you're to credit the interrogatory response. And that is correct, Your Honor. And it is also important to note that the record shows that it is not disputed that specific instances by these what we've offered as comparators, these coworkers, were events where considered to be gross misconduct. And in that regard, because patient harm occurred, would have been subject to termination for just one singular act. And the absence of those individuals as being individuals identified as people, coworkers with discipline, we submit is critical for this particular record. In the appellee's brief, there is an effort and an attempt to discount the reference by the Rule 30b-6 deponent, an individual who was identified and presented by Georgetown to address issues and concerns of comparators in terms of what discipline would be considered similar or more egregious. At this point, the appellee does not get to back away from what that individual offered as an admission, that there were events. Ms. Hollingsworth herself acknowledges in this record that there were particular events, and the absence of those individuals being disciplined in the interrogatory is further evidence of the favorable treatment, which is probative of pretext in this particular case. And for that reason, we believe and submit that the district court erred in making the decision as to whether or not Ms. Hollingsworth, in fact, held an honest and reasonable belief, because given the evidence of record, a reasonable juror could conclude that Ms. Hollingsworth's assertions and the position maintained is not worthy of pretext. What's your position, Ms. Rucker, on the comparators BD and CR? They had a different supervisor. So can we consider them as comparators under our circuit's law? If they weren't disciplined by Hollingsworth. Yes, we can. We are able to consider them as comparators because the record is clear that these individuals were, in fact, supervised by Ms. Sue Howell, who's the clinical director. So she supervised all of the nurses who were identified as comparators in this case. Do we know whether Sue Howell played a role in discipline and or discharge? It seems like Hollingsworth in her deposition talks about her own role in recommending people for termination, but do we have information about who's responsible for making or not making disciplinary decisions with respect to these individuals that ties Howell to them and to your client? Yes, what we do have, Your Honor, is in the record evidence that Sue Howell was involved with respect to the discussion and the consideration of the issuance of discipline towards Ms. Wheeler. The record shows that both Ms. Hollingsworth and, with your indulgence, and Ms. Howell were involved in a part of the disciplinary process that Ms. Wheeler was subjected to. I just note that the interrogatory responses from Georgetown say that the determination to terminate a plaintiff was recommended by Hollingsworth and supported by Howell in human resource. That is correct, and supported by meaning that she was involved in. We have in the appellate's brief at page 22, the footnote noted on the bottom there, where we indicate and identify that in addition to Ms. Hollingsworth, clinical director Howell was involved in the disciplinary proceedings taken against Ms. Wheeler. So she had an involvement at a particular stage of deciding what the discipline should issue and supporting, as Your Honor has pointed out, the decision to in fact terminate Ms. Wheeler. We believe that, and the record shows that at some point the fact that similarly situated white coworkers violated the same policy that Ms. Hollingsworth used to determine that Ms. Wheeler should be disciplined is not equally applied when her coworkers commit similar offenses who are responsible for the same policy, working under the same policy and procedure, who are doing the same duties as Ms. Wheeler. And with respect to the third point that I would like to make, the record shows that there is a departure by Georgetown, and I see my time with respect to rebuttal is about to expire, but I'll continue, that the departure shows that with respect to documenting evidence on Ms. Wheeler and with respect to implementing discipline against her coworkers, there's some disparity in how Georgetown chose to proceed. And we believe that that is a basis to ask this court to, in review of the brief submitted and the arguments presented here today, to reverse and remand this matter for trial for a jury trial on the merits. Thank you for your opportunity to speak. All right, we'll give you some time to reply. Thank you. Mr. Haddad? Thank you for your support. My name is Ziad Haddad. I represent Georgetown University Hospital. And we submit, Your Honors, that the decision of Judge Boasberg was well-reasoned and was based on the entirety of the record, should be upheld. A few points that I'd like to address is this issue of whether the court made credibility determinations and improperly concluded. Let me just get to the two problems I have with your position. The first is that you say that the plaintiff here was not similarly situated because she had past performance issues. But past performance issues weren't listed in her termination letter, and they weren't listed in your interrogatory responses when you were asked, state all the factors that you considered in making the decision to terminate the plaintiff. It only happens later in an affidavit for Ms. Hollinsworth. So, given our case law and how summary judgment works, either I don't credit Ms. Hollinsworth, or I say that Ms. Hollinsworth is shifting her explanations. Neither of those two things helps you with summary judgment. So that's my problem number one. Problem number two is that you've essentially admitted in your interrogatory responses that Hal either made the decision or was deeply involved in the decision to terminate the plaintiff because you said that the decision was recommended by Hollinsworth and supported by Hal and Human Resources, which says to a reasonable person, taken in the light and most favorable to the plaintiff, that Hollinsworth didn't even actually make the decision. She just recommended it. And so if Hal made the decision, then these other people who were supervised by Hal were comparatives. And that's a big problem to me for your position because two of those people were involved in misconduct that led to a patient's death. And how is that a jury question as to whether or not they're similarly situated? Fair enough, Your Honor. I'll address them in order. As far as your concern or the point you raised about shifting explanations, I can say that the record is this, is that we provided our interrogatory answers and then the deposition at which Ms. Hollinsworth indicated that in addition to the reasons for Ms. Wheeler's termination, which have been consistent throughout, there has been no inconsistency in terms of the reason underlying the termination was the events in late December of 2000, I want to say 2009. Do I need to read the Federal Rule about the effect of interrogatory responses? No, Your Honor. All right. Did you amend your interrogatory response? I don't believe we did, no, Your Honor. But in terms of the consistency of what she said, we believe it's consistent. Now, she does add during her deposition that she took into consideration certain previous history, but I don't think that that's necessary and it isn't necessary to the decision to terminate. And I don't believe that Ms. Hollinsworth ever said that but for those previous incidents, the decision to terminate her wouldn't have been made. Well, you used those previous incidents to say that these other people aren't comparators. So either it was taken into account or it wasn't. And if it wasn't taken into account, then why are you using that as an argument for why these other people aren't comparators because they don't have past performance problems? Well, Your Honor, it came to light towards the end of discovery that it was something that was taken into account and it is a comparator. However, it's hardly the only thing that differentiates Ms. Wheeler from these other individuals. Well, for example, W.L., you know, there it says that she didn't have the history of past bad performance. And K.M. was new, so again, didn't have the history that Ms. Wheeler had. So it is something that's been relied on in the effort to distinguish the white nurses who weren't disciplined. And I have to say, it is somewhat striking that every one of the individuals disciplined by Hollingsworth is non-white. And then there's this list of the white nurses who are involved in violations or infractions of rules and aren't even disciplined. Well, Your Honor, as we explained in our brief, this was not the past performance issue was not the overriding reason, number one. Number two, it is not the sole differentiating factor between Ms. Wheeler and these other individuals. As we explained in our brief, many, if not all, I think but for one, were not even supervised, but at least the record doesn't reflect that they were supervised by Ms. Hollingsworth. So W.L., supervised by Hollingsworth, gives an incorrect dose of heparin. The patient has to be intubated and transferred to the ICU, which I think is a significantly more serious sequelae than anything that happened to the patients that Wheeler was supervising on late December. So what is the thing that renders her not comparable? There's absolutely no evidence that Ms. Hollingsworth was involved in the investigation or in the recommendation that no disciplinary action be taken against Nurse W.L. So the decision wasn't hers, even though she was the supervisor. She just doesn't count. She's someone on Ms. Hollingsworth's watch, but doesn't end up being aware of or responsible for it. Well, it wasn't Ms. Hollingsworth's decision, and she didn't play a role in the investigation. So I don't know how we can compare apples to apples when you have different decision makers, and I think that the decision of this Court in New Orleans says that all aspects of the employment need to be nearly identical. And though this Court hasn't, from what I recall, specifically addressed all the factors that you look into, certainly the district court has addressed it, and they've identified one of the factors being whether the individual was supervised by the same person, and that's in the decision of Wilson v. LaHood. But the record evidence we have here from your interrogatory responses would tend to show that Hollingsworth didn't even have the authority to make a final disciplinary decision here. With all due respect, Your Honor, I don't – She says it was recommended. I believe what it says was that she made the decision, and it was supported by HR. It says that she recommended it, and it was supported by Howell and HR. I don't read that to say that she didn't have the authority to make the decision. Like, magistrate judges can recommend things, and then district judges have the authority to actually dismiss a case. I wouldn't say that the magistrate judge in that circumstance dismissed the case, terminated the case. Well, again, Your Honor, you know, my understanding of what was stated in the interrogatory answers was that this was a collaborative process, that Nurse Hollingsworth made the decision, that she received the support of HR, but I don't read that to mean that she didn't have the authority to make the decision, or she wasn't the one who made the decision. Let's suppose we disagree with you and believe that the two nurses, C.S. and – I'm trying to remember the other one – the two who were involved in the incident where the patient ultimately died. B.D. and C.R. B.D. and C.R. B.D. and C.R. If we decide that they're comparators because they are supervised by the same person in effect, it seems to me that the upshot of your position is that we have to rule as a matter of law that committing four errors in one shift is not of comparable seriousness as committing one error in the shift that results in the death of a patient. That seems to be your position, that we have to rule that as a matter of law because it's not a jury question. Well, Your Honor, I think that the circumstances of the investigation and discipline of Ms. Wheeler on the one hand and nurses B.D. and C.R. on the other hand need to be considered and I think have been addressed in the briefs as to the differentiating factors. B.D. and C.R., there was an independent team that investigated that incident and made the recommendation that they weren't responsible for the death of this patient. So those two nurses, by the way, the record doesn't reflect that they were either supervised by Ms. Wheeler or that Ms. Howell was in any way involved in the investigation. She was the director of the unit, no? Well, they are part of the same nursing unit and Ms. Howell was the person in charge. I'm trying to understand your evidentiary basis for the statement you just made. You filed a motion for summary judgment. You had a statement of undisputed facts. The plaintiff opposed your motion and filed a responsive statement where they disputed your facts. And then they filed their own statement of facts that they thought were in dispute. And they listed several facts, including facts about these six imperators. I read your reply in the district court and you didn't respond to these facts at all. So I don't understand why the proper thing at this stage isn't to say that these facts are conceded because you didn't contest them at summary judgment. I mean, for the purpose of deciding the summary judgment motion. I mean, the plaintiff filed a statement. It's at docket 47-1. It has 33 numbered paragraphs of factual allegations. And I don't see in the record that you disputed any of those. Your Honor, I'm quite certain that in our reply brief we addressed the imperators that were brought up and we made the arguments with respect to imperators not being comparable. It would shock me to learn that that was the case. But my point, sir, is that in your reply brief you tried to say that the statements in your statement of material facts should be treated as conceded because they weren't properly rebutted and responded to in the separate statement per the district court's local rules. The district court rejected that argument. The plaintiff, as was their right, submitted their own separate statement. And it was incumbent upon you under the local rules to say whether you thought any of those statements lacked evidentiary foundation or were based on incompetent evidence or whatever. And you didn't do so. So I guess I'm having trouble accepting an argument that disputes these facts now. Do you see my point? I think I understand. If I'm hearing you correctly, Your Honor, I think what you're saying is that I didn't file or that what wasn't filed was a separate piece of paper titled facts not in dispute in response to the document that was filed or the factual disputes that was filed by a plea. I will say, however, that those facts were certainly addressed in the reply brief. They may not have been addressed in a separate paper. And I don't have that in my mind right now as to how it was done. But I can say I think with certainty that they were disputed, that we did, in fact, dispute the differences between the comparatives put forth by Ms. Wheeler, Nurse Wheeler, and these various nurses. I mean, we addressed those point by point in our reply brief. Now, whether it was done in such a way as we filed a separate document titled undisputed facts, I don't recall at this juncture. Any questions? All right. Okay. Thank you. Ms. Rucker, have any time? Ms. Rucker does not have any time. All right. Why don't you take a couple minutes? Thank you, Your Honors, for this opportunity. I believe that at this juncture what we've provided both in our brief and in the record today is the position that we assert as to why this matter should be reversed and remanded. I do believe that the evidence in this case could particularly show that there were proper comparators and that, in fact, those comparators were not subjected, as Ms. Wheeler was, to the same policies and procedures in the same manner. And with that, we thank you for the opportunity to address the Court today. All right. Thank you.
judges: Henderson, Pillard, Wilkins